STATE of Tennessee, Appellee,

v.

James D. MORGAN, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

July 11, 1996.

Joyce M. Ward, Asst. Public Defender, Morristown, for Appellant.

Charles W. Burson, Attorney General and Reporter, Hunt S. Brown, Assistant Attorney General, Criminal Justice Division, Nashville, C. Berkeley Bell, Jr., District Attorney General, Greeneville, for Appellee.

## OPINION

HAYES, Judge.

The appellant, James Dale Morgan, pursuant to Rule 9, Tenn.R.App.P., appeals from the decision of the Criminal Court of Greene County affirming the district attorney general's denial of his application for pre-trial diversion. The appellant seeks to divert the offense of statutory rape. In this interlocutory appeal, the appellant challenges the trial court's finding that the district attorney did not abuse his discretion in denying diversion. Specifically, the appellant alleges that the district attorney abused his discretion by denying diversion based upon a recanted rape allegation made by a second alleged victim after the appellant's arrest on the present charge.

### I. Background

On December 12, 1994, a Greene County Grand Jury returned a presentment against the appellant charging him with statutory rape. The appellant submitted a written petition for pre-trial diversion on May 5, 1995. Five days later, the district attorney denied diversion. The appellant then filed a petition for writ of certiorari to review the district attorney's denial.

The record presented for review at the certiorari hearing consisted of the following items: the appellant's application for pre-trial diversion, which included twenty-nine letters attesting to his character and reputation in his community; a preliminary report of details regarding a second allegation of sexual misconduct; two statements by HM [1], the alleged victim in this case; two memos from the public defender to the district attorney; the pre-sentence report; and the district attorney's written response denying pre-trial diversion.[2] After reviewing these matters and hearing the argument of counsel, the trial judge found that the district attorney had not abused his discretion and, accordingly, dismissed the petition.

The appellant was seventeen years old when he became acquainted with HM, the alleged victim. At that time, HM was thirteen years old, although the appellant contends that she represented herself to be fifteen. The appellant and HM had known each other for several months before the alleged incident occurred. On the date of the alleged statutory rape, HM was thirteen years old and the appellant was eighteen.[3]

On October 20, 1994, HM related the following sequence of events to Detective Bobby Johnson of the Greeneville Police Department:

On Monday, October 17, 1994 at [approximately] 3:30 p.m., James Morgan came on over to my house.... We were sitting on the couch and began kissing. He pushed me down hard on the couch, I told him not to start anything and I tried to get up but he was on top of me. James was holding me down by placing his hands on the upper parts of my arms. I repeatedly told him to stop it but he wouldn't. I asked him to please get off but he wouldn't. I started crying and *he unbuttoned my pants and started jerking them down. I screamed out loud about three times then continued to cry. I told him again to stop but he wouldn't and I couldn't get up. He had his chest on mine and he lifted up enough to get his pants down....* I told him no but he said yes, I was going to.

---

1. As a matter of policy, this court does not name minors but, uses their initials. *See State v. Schimpf*, 782 S.W.2d 186, 188, *note* 1 (Tenn. Crim.App.1989).

2. During the evidentiary hearing, the district attorney referred to the "defendant's statement." The statement is not contained in the record.

3. The appellant's eighteenth birthday was on October 6, 1994.

When he penetrated me it was painful because I was a virgin. I told him it hurt and again told him to stop. He said it would be alright and continued for about 10–15 minutes. I don't know if he ejaculated or not.... After he got done I sat on the couch and was crying. He told me that it hurt the first time but that it wouldn't hurt anymore. He told me he loved and cared about me that is why he did it. *James left about 4 p.m. After he left I sat and cried on the couch....*

(Emphasis in original).

Four days later, HM, referring to the same alleged incident, gave another statement to Detective Johnson:

On Monday Oct. 17th, 1994, my papaw ... dropped me off at Greenville Middle School at appro. [sic] 7:45 a.m. I met with James Morgan, who picked me up, and did not go to school. We drove around for awhile and talked. Around 9 a.m. we come [sic] to my house.... We went into the house and was watching t.v. James asked me if I wanted to do it, I told him no. James later left, told me he was going to go somewhere, didn't say where, and said he would be right back. While he was gone I called Toby Brown and told him I thought James wanted me to do it, I told him I didn't want to. Toby told me if I didn't want to tell James. James come back so I hung up the phone. He came in and sat on the couch then started kissing. *The rest is like my first statement. I told him several times I didn't want to do it and he held me down with his hands.* After we had sexual intercourse I was crying. He tried to console me. After a while we went to Toby Brown's house and rode around awhile. Toby asked me about doing it or not, everytime [sic] he did I just turned my head. We rode around till about lunch time than [sic] James brought me home. I later went with Stacy Procop to Piggly Wiggly. We met Toby Brown and James Morgan there, Stacy wanted to see what Toby looked like. We talked to them about 5 minutes then left. I told Stacy about having sex with James but didn't tell her that he forced me to. I

didn't tell the truth before because I was afraid I'd get in trouble with my mom about [skipping] school. I also didn't think or plan on all this happening.

(Emphasis in original).

The appellant's version of the facts indicates that, on October 17, by prior arrangement, the appellant went to HM's home. They began kissing, and soon, it became apparent that they were going to have a sexual relationship. HM requested that the appellant use a condom. The appellant did not have one. At her request, the appellant went to the county health department to obtain a contraceptive device. While the appellant was gone, HM called Toby Brown, the appellant's best friend, and told him of her plans to have a sexual relationship with the appellant. She was still on the telephone with Toby when the appellant returned. Following the phone conversation, HM and the appellant engaged in consensual sexual intercourse.

At the time of the alleged incident, the appellant was an eighteen year old male who had dropped out of high school in the eleventh grade. The appellant has no criminal history, other than citations for misdemeanor traffic offenses. He lives with his grandparents and helps them to the best of his ability. He is in excellent physical and mental condition. He does not have a reputation for or a record of any type of violent behavior. The appellant stated in his affidavit that he holds no animosity toward HM and was very distressed to learn that she was only thirteen years old. He has no history of drug or alcohol abuse. His employment history is sporadic, consisting mainly of seasonal work, but he is actively pursuing full-time employment in the construction field.

At the certiorari hearing, the district attorney admitted that, after reviewing the material, he found "that there were two factors which are favorable to the defendant.... That is his lack of any significant prior criminal record and the letters of support from his family." However, he denied diversion due to several unfavorable factors.[4] The district attorney testified:

4. The State's written response in support of denial recites:

... the unfavorable factors ... are his attitude. He has indicated no remorse, no responsibility for his acts.... [H]is attitude and behavior since his arrest are unfavorable, and they also added great and significant weight to the factors of the need for deterrence and the fact that he is not amenable to correction.... [T]his young man is not amenable to correction. He has no idea of correction and he certainly needs to be corrected.

The district attorney based his findings solely on a subsequent rape allegation by HC[5], a fifteen year old girl. This allegation led to a subsequent investigation of the appellant. However, no formal charges had been filed against the appellant at the time of the certiorari hearing.[6] HC alleged that the appellant forcibly raped her and that he threatened to kill her if she reported the incident.[7] However, contradictory evidence was presented which indicates that HC recanted her accusation. HC's relatives have also made statements which support her retraction.[8] The State denies any knowledge of her recantation and maintains that this

---

Reviewing these factors there appear to be two which are favorable to the defendant: his lack of any significant prior criminal record and the letters of support from his family and friends. The five unknown factors are basically neutral, leaving six unfavorable factors.

Of the unfavorable factors the defendant's attitude and behavior since arrest are the most compelling and give greater weight and significance to the deterrent factor and the question of the defendant's amenability to correction ... clearly the defendant engaging, after his indictment in this case, in a forcible rape of a 15 year old, or even using force after some initial consent on the part of the child, indicate strongly that this defendant is not amendable [sic] to correction and is in great need of deterrence.

For all of these reasons, it does not appear that a diversion of this defendant in this particular case would serve the ends of justice or the needs of the public or this defendant. Indeed, a diversion of this defendant on this charge, in light of his attitude and conduct since arrest, would appear to deprecate [sic] the seriousness of this offense and would neither deter this defendant, or others similarly inclined from committing such crimes in the future.

The request for diversion is DENIED.

5. *See supra* note 1.

6. The appellant not only denies the rape, but also denies any consensual sexual relationship with HC.

7. The preliminary offense report of this second allegation, received only eighteen days prior to the hearing on May 10, recites the following details:

On April 14, 1995, [HC], age 15, received a phone call from one James Morgan ... and was invited to go riding around.... [HC] was visiting with her aunt ... on this date. Morgan picked up [HC] ... at approximately 5:30 p.m. and the two of them went riding around Greeneville for several hours. Morgan then drove to his residence somewhere behind Pioneer Credit and went into his house while [HC] waited in his car.... He drove the car somewhere behind the Co-Op ... and pulled the

car into a vacant field. The two of them got out of the car and Morgan got a blanket from the back of the car. They walked up to a barn on the property and in the barn Morgan spread the blanket and the two laid down and started kissing. Morgan removed [HC's] pants and underwear and pulled his pants down. He then attempted to have sex with [HC] and according to her she said "no" and he held her arms and had sex against her will.... They then drove to a convenience store.... They then ... cruised for about an hour visiting with friends. Morgan returned [HC] to [her aunt's] residence prior to 10:00 p.m. which was her curfew.

[HC] told no one of this incident until April 20th when she told her girlfriend.... [HC] then told her aunt and her grandmother of the incident....

8. In a memo to the district attorney from the public defender, dated May 8, the following information regarding the alleged rape was revealed:

[HC's aunt and uncle] indicated that [HC] has experienced some problems and that at this time they believe she has been dismissed from school for possession of illegal substances. According to these parties this young lady has been sent to her grandmother's due to the mother's inability to handle her. They also indicate that she has an extraordinary need for attention and a history of acting out to obtain attention....

After [HC and the appellant] arrived back home, [her aunt and uncle] ... did not notice anything out of the ordinary....

On that evening this young lady told her aunt that she had had a sexual encounter and indicated that it was with James. She further indicated that she had previously had sex and named the person but the aunt does not recall who she named. At that time there was no indication by this young lady that any force or coercion was used at all if, in fact, a sexual act did occur.

After [HC] had gone home and before she said she was raped she had another conversation with her [aunt]. She said she had been

information was not available to the State until after the decision denying diversion had been made. The appellant argues that, on May 8, two days before the State's denial, the State was in possession of a facsimile from the public defender recounting HC's recantation and the supporting statements of her family members.

At the conclusion of the hearing, the trial court found "substantial evidence" to support the district attorney's denial of diversion. These findings included lack of amenability to correction, behavior since arrest, attitude of law enforcement, deterrence, and the circumstances of the offense.[9] Reviewing these findings, the court related each factor, except for "the circumstances of the offense,"[10] to the second incident involving the alleged rape of HC. The court acknowledged HC's retraction of her initial allegation of forcible rape. Yet, the trial court found that "from the information the State has it could show another statutory rape because there is a two year age difference, more than a two year age difference. . . . So the State does have articulable evidence of a substantial nature to support its position. . . ."[11] The appellant now challenges the trial court's decision.

## II. Denial of Diversion

The appellant contends that the trial court erred by refusing to find that the district attorney abused his discretion in denying the appellant's application for pre-trial diversion. Specifically, the appellant argues that the district attorney abused his discretion by

basing his denial on the unsworn allegation of HC, even though she later recanted this allegation. The appellant also argues that, although the trial court recognized the possibility that the charge of rape might not stand based upon HC's subsequent recantation of its occurrence, it erred by concluding that the remaining factual allegations support a charge of statutory rape.

██ The decision to grant pre-trial diversion rests within the discretion of the district attorney. Tenn.Code Ann. § 40–15–105(b)(3) (1994 Supp.); *see also State v. Hammersley,* 650 S.W.2d 352, 353 (Tenn. 1983); *State v. Houston,* 900 S.W.2d 712, 714 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1995); *State v. Carr,* 861 S.W.2d 850, 855 (Tenn.Crim.App.1993). When deciding whether to grant an application for pre-trial diversion, the district attorney should consider the circumstances of the offense; the criminal record, social history, and present condition of the defendant, including his mental and physical conditions where appropriate; the deterrent effect of punishment upon other criminal activity; the defendant's amenability to correction; the likelihood that pre-trial diversion will serve the ends of justice and the best interests of both the public and the defendant; and the applicant's attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility, and attitude of law enforcement. *State v. Washington,* 866 S.W.2d 950, 951

---

> calling James and he would not return her calls. . . .
> Neither can believe she has made these allegations. Obviously due to the family matters involved, their preference would be not to be required to testify. But if necessary they are willing to relate matters to which they have personal knowledge in court or otherwise.
> On May 4, 1995 [HC's aunt] had another conversation with [HC]. [HC] told both [the aunt] and her grandmother that James did not rape her.

**9.** We note, however, that the district attorney did not predicate denial upon the "circumstances of the offense." *See supra* note 3.

**10.** The court based this factor upon the age of the alleged victim, HM, ". . . just one year older than would have caused a charge of aggravated

rape to have been lodged against the defendant with a huge substantial sentence. . . ."

**11.** At the time of the alleged second incident, HC was fifteen years old and the appellant was eighteen years old. The trial judge erroneously applied a two year age difference between victim and perpetrator. Tenn.Code Ann. § 39–13–506 (1994 Supp.) provides, in pertinent part:

> (a) Statutory rape is sexual penetration of a victim by the defendant or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least *four (4) years older than the victim.*

(emphasis added). At the certiorari hearing, neither the State nor the public defender noted any exception to the trial judge's interpretation of the statutory rape law.

(Tenn.1993) (citing *State v. Markham*, 755 S.W.2d 850, 852–53 (Tenn.Crim.App.1988) (citing *Pace v. State*, 566 S.W.2d 861 (Tenn. 1978) and *Hammersley*, 650 S.W.2d at 352). *See also Houston*, 900 S.W.2d at 714.

■■■■ The district attorney's decision regarding pre-trial diversion is presumptively correct, and the trial court will only reverse the decision when the appellant establishes that there has been a patent or gross abuse of prosecutorial discretion. *Houston*, 900 S.W.2d at 714 (citing *Hammersley*, 650 S.W.2d at 356). In order to establish abuse of discretion, "the record must show an absence of any substantial evidence to support the district attorney's refusal to grant pre-trial diversion." *Id.* The trial court may only consider evidence considered by the district attorney in his decision denying pre-trial diversion. *State v. Winsett*, 882 S.W.2d 806, 810 (Tenn.Crim.App.1993), *perm. to appeal denied*, (Tenn.1994). The trial court may not substitute its judgment for that of the district attorney when his decision is supported by the evidence. *State v. Watkins*, 607 S.W.2d 486, 489 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1980).

■■■■ For purposes of our review, the findings of the trial court are binding on this court unless the evidence preponderates against the findings. *Houston*, 900 S.W.2d at 715. We review the case, not to decide if the trial judge has abused his discretion, but to determine if the evidence preponderates against the findings of the trial judge who holds that the district attorney has or has not abused his discretion. *Watkins*, 607 S.W.2d at 489. Thus, the underlying issue for our determination remains whether or not, as a matter of law, the prosecutor abused his discretion in denying pre-trial diversion. *Carr*, 861 S.W.2d at 856.

■■■ In denying the appellant diversion, the district attorney relied on the second alleged incident involving the forcible rape of HC. The district attorney applied this later occurring alleged offense to find the following unfavorable factors: lack of amenability to rehabilitation, remorsefulness, deterrence, attitude, and behavior. He denies any knowledge, at the time of his decision, of HC's subsequent recantation of the rape allegation and of statements by her relatives supporting her later retraction. Therefore, according to the district attorney, he did not consider her recantation in his decision denying diversion. The public defender insists that, two days prior to the State's denial, she sent a facsimile to the district attorney narrating HC's subsequent retraction. The issue as to whether the prosecuting attorney knew of HC's retraction *prior* to his denial remains in dispute. Because the trial judge did not decide this issue at the certiorari hearing, we remand this case for a determination of this issue.[12]

Fundamental fairness dictates that, if the State intends to rely solely upon the alleged second incident of rape, there must be probable cause to believe that the offense did in fact occur. Contrary to the trial court's finding, the second rape allegation does not support a charge of statutory rape. *See supra* note 7. To deny diversion based upon an alleged event that may or may not have occurred would constitute an abuse of discretion. Moreover, an allegation and a recantation of that allegation do not provide "substantial evidence" to support a denial.

The disputes concerning whether the district attorney had knowledge of HC's recantation and whether the facts of the second allegation support a criminal charge preclude us from reaching a conclusion as to whether denial of pre-trial diversion was proper in this case. Accordingly, we remand this case to the trial court to resolve these issues.

PEAY and BARKER, JJ., concur.

---

12. An appellate court is not the proper forum for resolution of disputed facts. Factual determinations are within the jurisdiction of the trial court. Accordingly, we make no determination resolving disputed facts.