IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 27, 2018 Session

## STATE OF TENNESSEE v. DEREK CULLEN LEE

**Appeal from the Criminal Court for Knox County**
**No. 109864      Steven W. Sword, Judge**

_____

### No. E2017-01198-CCA-R3-CD

_____

The Defendant, Derek Cullen Lee, appeals from the Knox County Criminal Court's denial of his request for judicial diversion. The Defendant contends (1) that the trial court "did not sufficiently weigh all the [required] factors . . . in deciding suitability for diversion"; and (2) that the trial court's decision to deny his request for judicial diversion was based on the offense that he was convicted of rather than the applicable factors. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Donald A. Bosch (at sentencing hearing) and Douglas A. Trant (on appeal), Knoxville, Tennessee, for the appellant, Derek Cullen Lee.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Charme P. Allen, District Attorney General; and Randall Jay Kilby, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

The Defendant was indicted on February 1, 2017, on two counts of aggravated assault, four counts of reckless endangerment, one count of attempted aggravated burglary, and one count of vandalism. On March 24, 2017, the Defendant entered into a plea agreement with the State. The Defendant agreed to plead guilty to one count of reckless endangerment by discharging a firearm into an occupied habitation, a Class C felony, in exchange for dismissal of the seven other charges. See Tenn. Code Ann. §

39-13-103.  The Defendant and the State also agreed upon a three-year sentence to be served on supervised probation.  The sole issue remaining for the trial court was whether the Defendant would be granted judicial diversion.

A transcript of the Defendant's guilty plea submission hearing was not included in the appellate record.  According to the Defendant's presentence report, the factual bases for the Defendant's guilty plea was that on the evening of July 5, 2016, deputies from the Knox County Sheriff's Office "were dispatched to shots fired from" the Defendant's residence.  The presentence report described what happened next as follows:

> The Defendant opened his front door and began screaming at [the] officers.  [The] [o]fficers approached the Defendant, who pulled a gun out in a shooting position and pointed it at the officers.  [The] [o]fficers fired several shots and retreated to cover.  At some point during the incident, the Defendant fired a weapon at [his neighbor's] residence . . . while they were inside.  The round from the weapon went through a window and into a sofa.

The presentence reported also contained the Defendant's statement regarding the incident.  The Defendant described the incident as follows:

> I was involved in a verbal altercation with my neighbors, who called the police.  The police came to my door cursing at me.  I did not know who was at my door.  I answered the door with my personal handgun at my side.  Once I opened the door, I realized it was the police.  Upon realizing this, I closed my front door.  After I shut my door, the police fired four rounds into my front door directed at me.  Thankfully, they did not hit me.  Afterwards the police fired multiple rounds of tear gas into my house causing approximately [$5,000] in damages.
>
> I later learned that a round having been identified as coming from my handgun was found in the couch of my neighbors. . . .  I never intended to cause [them] any harm.  Any round that came from my firearm was accidental, and I am very sorry for any anxiety I caused my neighbors.  I was not ever intending to fire at them or the police.  To this day, I do not know how that round went into [their] home.
>
> I surrendered to the police after several hours, fearing for my life if I did not.  Upon my surrender, I was severely beaten, taken to the hospital by ambulance, and then immediately placed into custody. . . .  I am incredibly sorry for my neighbors, and neighborhood, for anything for which I may have been responsible.  In an effort to alleviate their concerns, I sold my house and moved out of the neighborhood.

On May 21, 2017, the trial court held a sentencing hearing on this matter. The State opposed granting judicial diversion "mainly because of the circumstances of the offense" and because it felt that the Defendant "should not be allowed to have possession of firearms."

The victim, Brad Lewis, provided a victim's impact statement. Mr. Lewis stated that on July 5, 2016, the Defendant "accosted [him] in [his] driveway," "threatened to kill [him]," "threatened to burn [his] house down," and "threatened to kill the police." According to Mr. Lewis, the Defendant "tried to enter [his] house through a locked door" at some point "[l]ater on that evening." Mr. Lewis stated that the Defendant also "fired into [his] house from [the Defendant's] back deck, through a clear window, into [his] family room, into [his] sofa" and that "[i]f someone had been at that location, someone would have been killed." Mr. Lewis opposed "any unsupervised probation" because "there [had] to be consequences for an action."

Defense counsel took "exception with the belief that [the Defendant] intentionally shot at [Mr. Lewis's] house." Defense counsel stated that he believed the gunshot was "some sort of accidental or incorrect discharge." Defense counsel told the trial court that the Defendant "suffered from depression" and "at least a degree of" post-traumatic stress disorder. Defense counsel noted that the Defendant had been in New York City on September 11, 2001. Defense counsel then addressed the conduct of the deputies who arrested the Defendant. Defense counsel stated that the Knox County Sheriff's Office was "interested in this entire case going away" because the Defendant "was severely beaten and mocked after he was handcuffed" and because the deputies were not justified in firing at the Defendant when he closed his front door.

Defense counsel stated that the Defendant, since his arrest, had entered psychological and substance abuse treatment, had dispossessed himself of his firearms, and had sold his house "to great [financial] detriment." According to defense counsel, the Defendant was "a computer systems architect," and he had been turned down "for multiple jobs . . . because of [his] outstanding charges." However, defense counsel stated that the Defendant's chances of employment would be improved if he was placed on judicial diversion.

In allocution, the Defendant stated that he was "very sorry" and could not "explain exactly how shameful and regretful [he was] for [his] behavior that evening." The Defendant stated that he was "severely depressed" at the time of the incident and that "alcohol combined with an antidepressant that [he] was taking" "may have contributed" to the incident. According to the Defendant, he had "been turned down for four jobs" since the incident. However, the Defendant stated that "for the first time in a long time[, he was] starting to have a positive outlook [on his] future." The Defendant assured the trial court that it would "never see [him] or see that kind of behavior from [him] again."

-3-

The Defendant also stated "that regardless of whether or not it [was] lawful to discharge weapons in a neighborhood, it would never happen again."

Addressing the Defendant's request for judicial diversion, the trial court stated:

There's certain factors the [c]ourt has to consider in making [the] decision [on judicial diversion]. The first is the defendant's amenability to correction. For the most part, I find that [the Defendant] is amenable to correction. He has taken steps already to address the underlying issues, including receiving therapy and moving out of the neighborhood to prevent any other further instances.

There's a couple of concerns on that point. One is, is that he is not able to explain how his weapon fired at the [neighbor's] home. That's concerning to me. I don't know how you don't know that. But in any event, I find [the Defendant] to be sincere in his -- in his remorse. So I think he is amenable to correction.

The circumstances of the offense, I believe, weigh against diversion. I'm not talking about what happened when the sheriff['s deputies] arrived there. That was bad enough. And I understand there -- there, obviously, are two sides to this story, because we don't, as [defense counsel] pointed out, have other charges that he's facing concerning the officers. So I have no doubt that the [S]heriff's [Office] had some wrongdoing in the way they handled the situation.

That's not what I'm talking about, the circumstances of the offenses. The circumstances of the offense that I'm talking about that I hold [the Defendant] accountable for is what happened before the police arrived that -- his confrontation with [Mr. Lewis], at some point his weapon gets . . . discharged in their home. So you got somebody having a heated confrontation with a neighbor, has a weapon at his side when somebody knocks on his door[,] and that neighbor's house gets shot up. That is something that's incredibly serious. And Mr. Lewis is right, but for the grace of God, he, his wife, or one of his children would have been killed.

We see that, unfortunately, happen here in Knoxville on occasions, happened fairly recently. People get struck by bullets that weren't intended to kill them, but they're just as dead. And so that's incredibly serious. This is not some misdemeanor offense that [the Defendant] is seeking diversion for. This is reckless endangerment with a deadly weapon, involving a handgun. So I think that weighs against diversion.

His criminal record is clean. . . . There was . . . [a] citation. A citation in Georgia on a misdemeanor offense that was dismissed. So I don't hold that against him. Otherwise, it's completely clean.

His social history is positive and weighs in favor of diversion. He is an accomplished person, has extensive education, has served the community through his employment at different times in the past. So that weighs in favor of diversion.

His physical and mental health. Physical, I don't have any proof one way or the other on. His mental health report, in the [presentence report] and his own statement today, that he suffers from depression, also, some [post-traumatic stress disorder], which he partially attributes to what happened in this incident here today.

So I think that's sort of a mixed bag. When you have a mental health issue, that's something that can be dealt with through therapy, but it also gives the [c]ourt some concern, too, about the person's ability to comply with the mandates of probation or diversion. So that's sort of a mixed bag there.

The deterrence value to others. The [c]ourt finds that that weighs against diversion in this case simply because what we've seen so much here in Knox County. He's using a weapon . . . a handgun, where a neighbor[ing] house gets shot into. And I don't think that granting diversion would be a deterrent to anybody, including the [D]efendant in this case. Although, I suspect the [D]efendant has learned his lesson, so to speak, from what he's been through.

So, really, the overriding issue on whether or not to grant diversion is, would the interest of justice be served both for the public and the [D]efendant by granting that diversion?

In this case, I weigh heavily upon the circumstances, the fact this was a firearm that was used, shot into a neighbor's home when he was having an angry dispute with [his neighbor], and find that the interest of justice would not be served in granting [the Defendant] diversion. So I'm going to deny his request for diversion, but I'm going to place him on probation.

The Defendant now appeals to this court.

## ANALYSIS

The Defendant contends that the trial court abused its discretion in denying his request for judicial diversion. The Defendant argues that the trial court "did not sufficiently weigh all the [required] factors . . . in deciding suitability for diversion." Specifically, the Defendant alleges that the trial court did not consider his attitude, behavior since arrest, home environment, family responsibility, and general reputation. The Defendant also argues that the trial court's decision to deny his request for judicial diversion was based on the offense that he was convicted of rather than the applicable factors. The State responds that the trial court "considered all of the relevant factors and explained on the record which factors it relied upon to deny diversion." The State further responds that the trial court did not abuse its discretion in denying the Defendant's request for judicial diversion.

There is no dispute that the Defendant was eligible for judicial diversion. See Tenn. Code Ann. § 40-35-313(a)(1)(B). The decision to grant judicial diversion lies within the sound discretion of the trial court. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). When the trial court has placed "on the record its reasons for granting or denying judicial diversion," the determination should be given a presumption of reasonableness on appeal and reviewed for an abuse of discretion. State v. King, 432 S.W.3d 316, 327 (Tenn. 2014). We may not revisit the issue so long as the record contains any substantial evidence to support the trial court's decision. Parker, 932 S.W.2d at 958.

When making a determination regarding judicial diversion, the trial court must consider the following factors: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's mental and physical health; (6) the deterrent effect of the sentencing decision to both the defendant and other similarly situated defendants; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing Parker, 932 S.W.2d at 958); see also King, 432 S.W.3d at 326 (reaffirming that the Electroplating requirements "are essential considerations for judicial diversion").

A trial court is "not required to recite all of the Parker and Electroplating factors when justifying its decision on the record in order to obtain the presumption of reasonableness." King, 432 S.W.3d at 327. However, "the record should reflect that the trial court considered the Parker and Electroplating factors in rendering its decision and that it identified the specific factors applicable to the case before it." Id. If the trial court "fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not

appropriate." Id. "In those instances, the appellate courts may either conduct a de novo review or . . . remand the issue for reconsideration." Id. at 328.

Here, the trial court considered all of the Parker and Electroplating factors and explained on the record which factors it relied upon in denying the Defendant's request for judicial diversion. The Parker and Electroplating factors "are essential considerations for judicial diversion." King, 432 S.W.3d at 326. The factors that the Defendant complains were not considered by the trial court, his attitude, behavior since arrest, home environment, family responsibility, and general reputation, were not specifically delineated in Parker or Electroplating. See Electroplating, Inc., 990 S.W.2d at 229; Parker, 932 S.W.2d at 958.

Rather, these factors have been listed as considerations a district attorney should take into account in deciding whether to grant or deny pre-trial diversion. See State v. Morgan, 934 S.W.2d 77, 81 (Tenn. Crim. App. 1996). But, these factors have never been included as considerations for a trial court when addressing a request for judicial diversion. As such, the trial court did not abuse its discretion by failing to address factors that are not included in the Parker and Electroplating analysis. Furthermore, all of the factors raised by the Defendant would fall under the factor of the Defendant's social history, which the trial court considered and found to be "positive and weigh[ed] in favor of diversion." Accordingly, we conclude that this issue is without merit.

We also conclude that the record belies the Defendant's claim that the trial court's decision to deny his request for judicial diversion was based solely on the offense that he was convicted of rather than the applicable factors. Instead, the trial court placed great weight on the circumstances of the offense. As the trial court stated, the Defendant had "a heated confrontation with a neighbor, [had] a weapon at his side when somebody knock[ed] on his door[,] and [then] that neighbor's house [got] shot up." The victim, Mr. Lewis, stated that the Defendant "fired into [his] house from [the Defendant's] back deck, through a clear window, into [his] family room, [and] into [his] sofa." The trial court concluded that it was "but for the grace of God" that someone was not killed that evening.

Additionally, the trial court concluded that the deterrent effect of the sentencing decision weighed against granting the Defendant judicial diversion. The trial court noted that there had been a recent uptick in gun violence in Knox County and several cases where "[p]eople [were] struck by bullets that weren't intended to kill them, but they[ were] just as dead." The trial court also noted that the Defendant's mental health was "sort of a mixed bag" neither weighing for nor against diversion. Also, while the trial court did find that the Defendant was amenable to correction and that this weighed in favor of granting diversion, it had "concerns" about the fact that the Defendant was "not able to explain how his weapon fired at the [neighbor's] home." As such, we conclude

-7-

that there was substantial evidence supporting the trial court's denial of the Defendant's request for judicial diversion.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE